UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | No. 1:23-cr-00053-JMS-MJD |
| *vs.* ) | |
| ) | |
| BRUCE A. WILLIAMS, ) | -01 |
| ) | |
| *Defendant.* ) | |

**ORDER**

On November 14, 2023, the Government filed a Third Superseding Indictment against Defendant Bruce Williams, charging him with one count of Conspiracy to Receive, Possess, Store, or Sell Stolen Firearms in violation of 18 U.S.C. §§ 922(j) and 371 (Count 1) and two counts of Possession of Firearms by a Felon in violation of 18 U.S.C. § 922(g)(1) (Count 2 and 6). [Filing No. 195.] Mr. Williams has filed a Motion for Leave to Move to Dismiss, [Filing No. 306], along with a Brief in Support of Motion to Dismiss, [Filing No. 311], in which he seeks permission to belatedly file a Motion to Dismiss and requests dismissal of Counts 2 and 6. His filings are ripe for the Court's consideration.

**I.**
**BACKGROUND**

In addition to charging Mr. Williams with one count of Conspiracy to Receive, Possess, Store, or Sell Stolen Firearms, the Third Superseding Indictment charges Mr. Williams with two counts of Possession of Firearms by a Felon (Counts 2 and 6) in violation of 18 U.S.C. § 922(g)(1) based on Mr. Williams' previous convictions for:

- Felony Criminal Recklessness in Marion County, Indiana, Cause No. 49G20-1308-FD-052063, on July 7, 2014;

- Felony Dealing in a Narcotic Drug in Marion County, Indiana, Cause No. 49G21-1509-F2-032321, on July 19, 2018; and

- Felony Resisting Law Enforcement in Marion County, Indiana, Cause No. 49G21-1701-F5-003234, on July 19, 2018.

Mr. Williams now seeks dismissal of Counts 2 and 6. [Filing No. 306; Filing No. 311.] The Court **GRANTS** Mr. Williams' Motion for Leave to Move to Dismiss, [Filing No. 306], to the extent that it allows him to belatedly request dismissal of Counts 2 and 6, and considers his request below.

## II.
### STANDARD OF REVIEW

A defendant may move to dismiss counts in an indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B). One basis for a Rule 12(b)(3)(B) motion to dismiss is that the charged offense is based on an unconstitutional statute. *See, e.g.*, *United States v. Posey*, 655 F. Supp. 3d 762, 766 (N.D. Ind. 2023). Here, Mr. Williams brings a facial challenge to § 922(g)(1) and to succeed, he must show that the statute is unconstitutional in all applications. *City of L.A. v. Patel*, 576 U.S. 409, 415-18 (2015).

## III.
### LEGAL FRAMEWORK

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. 18 U.S.C. § 922(g)(1), the statute which Mr. Williams is charged with violating in Counts 2 and 6, makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year…to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Cases analyzing the constitutionality of laws other

than § 922(g)(1) have shaped the legal framework within which the Court will analyze Mr. Williams' argument that § 922(g)(1) violates the Second Amendment, and the Court traces the evolution of that framework below.

In 2008, the United States Supreme Court considered the constitutionality of a District of Columbia law banning handgun possession by making it a crime to carry an unregistered firearm and also prohibiting the registration of handguns. *District of Columbia v. Heller*, 554 U.S. 570, 575 (2008). The Supreme Court found that the law was unconstitutional, recognizing an individual's Second Amendment "right of law-abiding, responsible citizens" to possess handguns for self-defense in their homes. *Id.* at 635. It noted that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," which it recognized as "presumptively lawful regulatory measures." *Id.* at 626-27. It held that the plaintiff could legally possess a handgun if he was "not disqualified from the exercise of Second Amendment rights," including that he was "not a felon." *Id.* at 631-35; *see also McDonald v. Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill.").

After *Heller*, the Seventh Circuit elucidated a two-step inquiry when considering whether a law violates the Second Amendment:

> First, the threshold inquiry…will be a "scope" question: Is the restricted activity protected by the Second Amendment in the first place? The answer requires a textual and historical inquiry into original meaning.
>
> \*         \*         \*
>
> [I]f the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected – then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights. [This] requires the court to evaluate the regulatory means the

> government has chosen and the public-benefits end it seeks to achieve….[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right. [B]roadly prohibiting laws restricting the core Second Amendment right…are categorically unconstitutional.  For all other cases, however, we are left to choose an appropriate standard of review from among the heightened standards of scrutiny the Court applies to governmental actions alleged to infringe enumerated constitutional rights; the answer to the Second Amendment "infringement" question depends on the government's ability to satisfy whatever standard of means-end scrutiny is held to apply.

Ezell v. City of Chicago, 651 F.3d 684, 702-03 (7th Cir. 2011) (quotations and citations omitted).

In 2022, the Supreme Court refined its analysis of statutes implicating the Second Amendment when it decided New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). There, the Supreme Court considered whether a New York law requiring individuals to have a license in order to carry a handgun in public violated the Second Amendment and found that the two-step approach set forth by the Circuit courts – including the Seventh Circuit in *Ezell* – in analyzing the issue was "one step too many." Id. at 19.  It held that:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

Id. at 17 (quotation and citation omitted).

Just over two months ago, the Supreme Court considered whether 18 U.S.C. § 922(g)(8), which prohibits an individual who is subject to a domestic violence restraining order from possessing a firearm, violates the Second Amendment in United States v. Rahimi, 602 U.S. ----, 144 S. Ct. 1889 (June 21, 2024).  The *Rahimi* Court refined its approach to the question of whether a statute is consistent with historical tradition, stating:

> [S]ome courts have misunderstood the methodology of our recent Second Amendment cases. These precedents were not meant to suggest a law trapped in amber…. [T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers…. [T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances…. Why and how the regulation burdens the right are central to this inquiry. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin."

*Id.* at 1897-98 (quotations and citations omitted).

It is within this legal framework that the Court considers Mr. Williams' arguments.

## IV.
### DISCUSSION

Mr. William argues in support of his Motion to Dismiss that the Second Amendment's plain text protects the right of the people to bear arms, that felons are included in "the people" protected by the Second Amendment, that it is unconstitutional to categorically exclude felons from "the people" referred to in the Second Amendment, and that "the categorical ban on an individual's possession of a firearm based on their status as a felon is presumptively unconstitutional under the plain text of the Second Amendment." [Filing No. 311 at 5-8.] He asserts that it is the Government's burden to show that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation and that the Government cannot point to a "distinctly similar" law that reflects such a tradition. [Filing No. 311 at 8-11.] Mr. Williams traces various English laws and contends that "the English never tried to disarm all felons[; e]ven as to individuals found to be violent and

rebellious, they tried to limit the use of firearms, but those individuals could keep arms for self-defense." [Filing No. 311 at 12-13.] He also argues that "[t]here is little evidence of an early American practice of forever barring all people convicted of a felony from ever again possessing a firearm," attempts to distinguish different Colonial and Founding-era laws regulating firearms, and asserts that "the founders never proposed barring felons from receiving guns or disarming them." [Filing No. 311 at 13-18.] Mr. Williams asserts that Nineteenth Century history also does not support depriving convicted felons of possessing firearms, noting that "Congress declined to disarm southerners who fought against the Union in the Civil War," and that "there was a consistent practice of allowing people who broke the law to keep weapons for self-defense." [Filing No. 311 at 18-20.] He argues that the Government has not pointed to "distinctly similar" or "relevantly similar" laws that support a tradition of disarming felons. [Filing No. 311 at 20-25.]

In its response, the Government argues that the Seventh Circuit "upheld the constitutionality of § 922(g)(1)" in *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024), and that district courts within this district and the majority of all courts have done the same. [Filing No. 313 at 6-7.] The Government asserts that § 922(g)(1) is "consistent with historical traditions," pointing to Seventh Circuit decisions and "scholars of the Second Amendment" indicating that felons do not have Second Amendment rights. [Filing No. 313 at 10.] It argues that *Rahimi* is consistent with this analysis. [Filing No. 313 at 11-12.]

The Court analyzes Mr. Williams' arguments keeping in mind the Supreme Court's most recent guidance set forth in *Rahimi* – specifically, that "[a] court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances," and that "[t]he law must

comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi*, 144 S. Ct. at 1898.

First, the Court considers the effect of the Seventh Circuit's decision in *Gay*, which predates *Rahimi*. There, the Seventh Circuit – applying *Bruen* – rejected a convicted felon and parolee's as-applied challenge to § 922(g)(1), finding that the *Bruen* Court repeatedly used the phrase "law-abiding, responsible citizens" or something similar when describing who possesses rights under the Second Amendment, and that the defendant was neither – he had been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison, and had fled from the police by car and on foot in connection with the charges he sought to have dismissed. *Gay*, 98 F.4th at 846-47 (quoting *Bruen*, 597 U.S. at 26). The Seventh Circuit found that "parolees lack the same armament rights as free persons." *Gay*, 98 F.4th at 847. Mr. Williams does not address *Gay* and the Government does not address whether Mr. Williams was on parole when he allegedly violated § 922(g)(1) – a fact that this Court finds is critical in determining the precedential effect of *Gay*. The Court's review of Mr. Williams' felony state court cases, however, indicates that Mr. Williams was discharged from parole on April 19, 2022 in connection with one his cases, *State of Indiana v. Bruce Williams*, 49G21-1509-F2-032321 (Case Summary indicating that Information Probation Discharge Sheet was filed on April 19, 2022). Count 2 alleges that Mr. Williams unlawfully possessed a firearm on March 9, 2022 and Count 6 alleges that Mr. Williams unlawfully possessed a firearm on April 19, 2023, so it appears that Mr. Williams was on parole only for purposes of Count 2.

In any event, the Court need not rely on *Gay* because Mr. Williams' constitutional challenges to § 922(g)(1) fail in any event under *Bruen* and *Rahimi*. In *Rahimi*, the Supreme Court found that § 922(g)(8), which prohibits an individual from possessing a firearm when they are

subject to a domestic violence restraining order and pose "a credible threat to the physical safety" of a protected person, does not violate the Second Amendment because "the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." 144 S. Ct. at 1898. The *Rahimi* Court traced the history of firearms regulations, recognizing a pattern of prohibiting those that are a danger to others from possessing firearms. *Id.* at 1899-1901 (noting that the Militia Act of 1662 authorized the King's agents to "seize all Armes in the custody or possession of any person…judge[d] dangerous to the Peace of the Kingdom" and that surety and "going armed" laws "confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed"). The *Rahimi* Court concluded that § 922(g)(8) was "relevantly similar" to these historical laws "in both why and how it burdens the Second Amendment right," and noted that the regulation struck down in *Bruen* "broadly restrict[ed] arms use by the public generally," while § 922(g)(8) does not. 144 S. Ct. at 1901.

The Court finds that the Supreme Court's reasoning in *Rahimi* applies with equal force to § 922(g)(1). The *Rahimi* Court recognized the Nation's tradition of regulating individuals "who present a credible threat to the physical safety of others" from possessing firearms, 144 S. Ct. at 1902, and the passage of § 922(g)(1) implies a recognition that felons are threatening. Moreover, the *Rahimi* Court explicitly recognized that "many…prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626-27 n.26).

Relying on *Rahimi*, the Court finds that § 922(g)(1) is "relevantly similar to laws that our tradition is understood to permit" and "comport[s] with the principles underlying the Second Amendment," *Rahimi*, 144 S. Ct. at 1897-98, so it does not violate the Second Amendment. *See*

*also United States v. Lee*, No. 1:23-cr-00103-JRS-MJD-1, Dkt. 92 at 9 (S.D. Ind. July 9, 2024) (rejecting Second Amendment challenge to § 922(g)(1) and stating that the *Rahimi* analysis "is just as applicable to § 922(g)(1) as to § 922(g)(8)," and that "[i]f, as *Rahimi* holds, the government can disarm individuals who threaten others' safety, and felons are deemed threatening, as the fact of § 922(g)(1)'s passage implies, then there is no constitutional problem with the law – it is consistent with 'tradition.'"); *United States v. McGraw*, 2024 WL 3904618, at *13 (N.D. Ill. Aug. 22, 2024) (holding that § 922(g)(1) does not violate the Second Amendment because it "is consistent with the Nation's historical tradition of firearm regulation" and "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms"); *United States v. Razo*, 2024 WL 3291762, at *3 (N.D. Ind. July 3, 2024) (same principle).  The Court **DENIES** Mr. Williams' request to dismiss Counts 2 and 6 of the Third Superseding Indictment.

## V.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mr. Williams' Motion For Leave to Move to Dismiss to the extent that it allows him to belatedly file his Motion to Dismiss, but **DENIES** his request to dismiss Counts 2 and 6 of the Third Superseding Indictment.  [306; 311.]  Trial on all charges will proceed as scheduled on November 18, 2024.

Date: 9/10/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**